IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KAREN GRUBAUGH, a single woman, *Petitioner*,

*v.*

THE HONORABLE JAMES T. BLOMO, Judge of the SUPERIOR COURT
OF THE STATE OFARIZONA, in and for the County of MARICOPA,
*Respondent Judge,*

ANDREA C. LAWRENCE and JOHN DOE LAWRENCE, wife and
husband; HALLIER & LAWRENCE, P.L.C. d/b/a HALLIER LAW FIRM,
a public limited company; ABC CORPORATIONS I-X; BLACK and
WHITE PARTNERSHIPS AND/OR SOLE PROPRIETORSHIPS I-X; JOHN
DOES I-X and JANE DOES I-X, *Real Parties in Interest.*

No. 1 CA-SA 15-0012
FILED 9-22-2015

Petition for Special Action from the Superior Court in Maricopa County
No. CV 2013-007431
The Honorable James T. Blomo, Judge

**JURISDICTION ACCEPTED, RELIEF GRANTED IN PART**

COUNSEL

Sternberg & Singer Ltd., Phoenix
By Melvin Sternberg
    And
Law Office of Paul M. Briggs PLLC, Phoenix
By Paul M. Briggs
*Co-Counsel for Petitioner*

Broening Oberg Woods & Wilson PC, Phoenix
By Donald Wilson, Sarah L. Barnes, Kevin R. Meyer
*Counsel for Real Parties in Interest*

---

**OPINION**

Presiding Judge John C. Gemmill delivered the opinion of the Court, in which Judge Donn Kessler and Judge Kenton Jones joined.

---

**G E M M I L L**, Judge:

¶1        Plaintiff/petitioner Karen Grubaugh brought this legal malpractice action against her former attorneys, defendants/real parties in interest Andrea Lawrence and the Hallier Law Firm (collectively "Lawrence"), seeking damages for allegedly substandard legal advice given to Grubaugh during a family court mediation. Grubaugh challenges the superior court's ruling that the Arizona mediation process privilege created by Arizona Revised Statutes ("A.R.S.") section 12-2238(B) has been waived or is otherwise inapplicable. We accept special action jurisdiction and grant relief as described herein. Any communications between or among Grubaugh, her attorney, or the mediator, as a part of the mediation process, are privileged under § 12-2238(B). Based on the statute and the record before us, that privilege has not been waived. Because these communications are neither discoverable nor admissible, the superior court is directed to dismiss any claims in the complaint dependent upon such communications.

¶2        Grubaugh alleges that Lawrence's representation of Grubaugh in marital dissolution proceedings fell below the applicable standard of care. Grubaugh's malpractice claim is premised, in part, on the distribution of certain business assets. Agreement regarding the method of distribution, and the handling of the tax liability resulting therefrom, was reached during a family court mediation involving Grubaugh, her ex-husband, their attorneys, and the neutral mediator. Before formal discovery began in this matter, Lawrence asked the superior court to order that the A.R.S. § 12-2238(B) mediation privilege was waived as a result of Grubaugh's allegations of malpractice. Lawrence seeks to utilize as evidence communications between herself and Grubaugh, occurring during and after mediation, which led to Grubaugh's ultimate acceptance

2

of the dissolution agreement. In the alternative, Lawrence moved to strike Grubaugh's allegations relating to the mediation if the court held the pertinent communications are protected as confidential.

**¶3** The superior court granted Lawrence's motion in part, concluding the mediation privilege was waived as to all communications, including demonstrative evidence, between the mediator and the parties and between Lawrence and Grubaugh. The court reasoned in part that the privilege was not applicable in this instance because the statute did not contemplate the precise issue presented. The court then ruled that Lawrence's alternative motion to strike was moot.

**¶4** Grubaugh filed this special action challenging the court's order. Because this is a matter involving privilege and imminent disclosure of potentially privileged information, remedy by appeal is inadequate and we therefore accept special action jurisdiction. *See Roman Catholic Diocese of Phoenix v. Superior Court ex rel. Cnty. of Maricopa*, 204 Ariz. 225, 227, ¶ 2, 62 P.3d 970, 972 (App. 2003); *Ariz. Bd. of Med. Exam'rs v. Superior Court*, 186 Ariz. 360, 361, 922 P.2d 924, 925 (App. 1996).

## ARIZONA'S STATUTORY MEDIATION PROCESS PRIVILEGE

**¶5** Arizona's mediation process privilege is created by A.R.S. section 12-2238(B):

> The mediation process is confidential. Communications made, materials created for or used and acts occurring during a mediation are confidential and may not be discovered or admitted into evidence unless one of the following exceptions is met:
>
> 1. All of the parties to the mediation agree to the disclosure.
>
> 2. The communication, material or act is relevant to a claim or defense made by a party to the mediation against the mediator or the mediation program arising out of a breach of a legal obligation owed by the mediator to the party.
>
> 3. The disclosure is required by statute.

       4.      The disclosure is necessary to enforce an agreement to mediate.

Subsection (C) of § 12-2238 provides further protection for a mediator against being forced to testify or produce evidence in response to service of process or subpoena:

> Except pursuant to subsection B, paragraph 2, 3 or 4, a mediator is not subject to service of process or a subpoena to produce evidence or to testify regarding any evidence or occurrence relating to the mediation proceedings. Evidence that exists independently of the mediation even if the evidence is used in connection with the mediation is subject to service of process or subpoena.

**¶6**      When interpreting a statute, we look to the plain meaning of the language as the most reliable indicator of legislative intent and meaning. *New Sun Bus. Park, LLC v. Yuma Cnty.*, 221 Ariz. 43, 46, ¶ 12, 209 P.3d 179, 182 (App. 2009); *see also Maycock v. Asilomar Dev. Inc.*, 207 Ariz. 495, 500, ¶ 24, 88 P.3d 565, 570 (App. 2004). When the statute's language is "clear and unequivocal, it is determinative of the statute's construction." *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). This court will apply the clear language of a statute unless such an application will lead to absurd or impossible results. *City of Phoenix v. Harnish*, 214 Ariz. 158, 161, ¶ 11, 150 P.3d 245, 248 (App. 2006).

**¶7**      The mediation process privilege was not waived when Grubaugh filed a malpractice action against her attorney because none of the four specific statutory exceptions in A.R.S. § 12-2238(B) is applicable. The statute's language is plain, clear, and unequivocal: The privileged communications "are confidential and may not be discovered or admitted into evidence *unless one of the following exceptions is met*." A.R.S. § 12-2238(B) (emphasis added). It provides for a broad screen of protection that renders confidential all communications, including those between an attorney and her client, made as part of the mediation process. Further, of the four exceptions listed in the statute, none excludes attorney-client communications from mediation confidentiality. The legislature could have exempted attorney-client communications from the mediation process privilege, but it did not do so. *Cf.* Fla. Stat. § 44.405(4)(a)(4) (West 2004) (specifically exempting from the mediation privilege those communications "[o]ffered to report, prove, or disprove professional malpractice occurring during the mediation").

**¶8**         Our construction of this wide-reaching statute is confirmed by complementary rules of court referencing it.  Arizona's Rules of Family Law Procedure emphasize that "all communications" in the context of the mediation are confidential and § 12-2238 is applicable:  "Mediation conferences shall be held in private, and *all communications, verbal or written, shall be confidential. . . .* Unless specifically stated otherwise in these rules, the provisions of A.R.S. § 12-2238 shall apply to any mediation conference held in conformance with this rule."  Ariz. R. Fam. L. P. 67(A) (emphasis added).  Similarly, the Maricopa County Local Rules further express that the only exceptions to mediation confidentiality are found in § 12-2238(B): "Mediation proceedings shall be held in private, and *all communications, verbal or written, shall be confidential except as provided in A.R.S. § 12-2238(B)*." Ariz. Local R. Prac. Super. Ct. (Maricopa) 6.5(b)(1) (emphasis added).

**¶9**         The history of the mediation process privilege further supports its application in this case.  From 1991 to 1993, mediation confidentiality was codified in A.R.S. § 12-134.  The current statute was created by an amendment in 1993.  The 1991 statute differed significantly from the current version by expressly limiting confidentiality to "communications made *during a mediation*."  A.R.S. § 12-134 (West 1993) (Emphasis added.)  In contrast, the current statute states that the "mediation process" is confidential.  When the legislature alters the language of an existing statute, we generally presume it intended to change the existing law.  *State v. Bridgeforth*, 156 Ariz. 60, 63, 750 P.2d 3, 6 (1988). Therefore, by casting a wider net of protection over mediation-related communications, acts, and materials, the legislature altered the statute by increasing its reach.

**¶10**         In holding that the mediation process privilege had been waived, the superior court reasoned that the situation at hand was analogous to one in which a party impliedly waives the attorney-client privilege.  The mediation process privilege, however, differs from the attorney-client privilege, which may be impliedly waived.  *See Church of Jesus Christ of Latter-Day Saints v. Superior Court in & for Maricopa Cnty.*, 159 Ariz. 24, 29, 764 P.2d 759, 764 (App. 1988); *see also State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, 56–57, ¶¶ 10–11, 13 P.3d 1169, 1173–74 (2000).  The attorney-client privilege originated at common law and was subsequently codified by the Arizona legislature.  At common law, the privilege was impliedly waived when a litigant's "course of conduct [was] inconsistent with the observance of the privilege."  *Bain v. Superior Court in & for Maricopa Cnty.*, 148 Ariz. 331, 334, 714 P.2d 824, 827 (1986).

**¶11**       Consistent with the common law, the codified attorney-client privilege includes a broad waiver provision: "A person who offers himself as a witness and voluntarily testifies with reference to the communications . . . thereby consents to the examination of such attorney, physician or surgeon." A.R.S. § 12-2236. Moreover, there is no indication that the legislature, when codifying the attorney-client privilege, intended to abrogate the common law implied waiver of the privilege. *See Church of Jesus Christ of Latter-Day Saints*, 159 Ariz. at 29, 764 P.2d at 764 (holding that A.R.S. § 12-2236 does not abrogate common law forms of waiver); *Carrow Co. v. Lusby*, 167 Ariz. 18, 21, 804 P.2d 747, 750 (1990) ("[A]bsent a manifestation of legislative intent to repeal a common law rule, we will construe statutes as consistent with the common law"); *see also Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991) (explaining that if the common law is to be "changed, supplemented, or abrogated by statute," such a change must be express or a necessary implication of the statutory language).

**¶12**       In contrast to the attorney-client privilege, Arizona's mediation process privilege has no common law origin. It was created entirely by the legislature. Therefore, this court must rely upon the language of the statute to determine its meaning. Unlike waiver of the attorney-client privilege under the statute and common law, the statutory waiver provisions of the mediation process privilege are specific and exclusive:

> The mediation process is confidential. Communications made, materials created for or used and acts occurring during a mediation are confidential and may not be discovered or admitted into evidence unless one of the following exceptions is met.

A.R.S. § 12-2238(B). By expressly shielding the entire mediation process, other than when an exception provided by the statute applies, § 12-2238(B) "occup[ies] the entire field" of methods by which the mediation process privilege might be waived. The statute therefore leaves no room for an implied waiver under these circumstances. *Cf. Church of Jesus Christ of Latter-Day Saints*, 159 Ariz. at 29, 764 P.2d at 764 (explaining that attorney-client privilege statute allows room for implied waiver under the common law).

**¶13**       The parties do not contend that the communications at issue here come within any of the four exceptions specifically delineated within

A.R.S. § 12-2238(B). In finding an implied waiver, the superior court reasoned in part that the statute "did not contemplate the exact issue" presented by this case. But we cannot reach the same conclusion in light of the language of the statute, which does not allow us to infer the existence of an implied waiver. *See Morgan v. Carillon Inv., Inc.*, 207 Ariz. 547, 552, ¶ 24, 88 P.3d 1159, 1164 (App. 2004) (explaining that even though the legislature did not include a specific provision that would have been beneficial, the court will not "interpret" the statutes "to add such a provision"), *aff'd*, 210 Ariz. 187, 109 P.3d 82 (2005). The privilege is therefore applicable.

**¶14** Additionally, a plain-language application of the statute in this case does not produce an absurd result, but is supported by sound policy. *See State v. Williams*, 209 Ariz. 228, 237, ¶ 38, 99 P.3d 43, 52 (App. 2004) (examining a rule's policy implications in deciding whether its application would lead to absurd results) *See also State v. Estrada*, 201 Ariz. 247, 251, ¶ 17, 34 P.3d 356, 360 (2001) (explaining that a result is "absurd" when "it is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion" (internal quotation omitted)). By protecting *all* materials created, acts occurring, and communications made as a part of the mediation process, A.R.S. § 12-2238 establishes a robust policy of confidentiality of the mediation process that is consistent with Arizona's "strong public policy" of encouraging settlement rather than litigation. *See Miller v. Kelly*, 212 Ariz. 283, 287, ¶ 12, 130 P.3d 982, 986 (App. 2006). The statute encourages candor with the mediator throughout the mediation proceedings by alleviating parties' fears that what they disclose in mediation may be used against them in the future. *Id.* The statute similarly encourages candor between attorney and client in the mediation process.

**¶15** Another reason confidentiality should be enforced here is that Grubaugh is not the only holder of the privilege. The privilege is also held by Grubaugh's former husband, the other party to the mediation. *See* A.R.S. § 12-2238(B)(1).[1] The former husband is not a party to this malpractice action and the parties before us do not claim he has waived the mediation process privilege. It is incumbent upon courts to consider and generally protect a privilege held by a non-party privilege-holder. *See Tucson Medical Center Inc. v. Rowles*, 21 Ariz. App. 424, 429, 520 P.2d 518, 523 (App. 1974). The former husband has co-equal rights under the statute to the

---

[1] The mediator may also be a holder of the privilege, but we need not reach that issue in this opinion.

confidentiality of the mediation process. Although the superior court did rule that the privilege was not waived as to communications between the mediator and the former husband, waiving the privilege as to one party to the mediation may have the practical effect of waiving the privilege as to all. In order to protect the rights of the absent party, the privilege must be enforced.

¶16 Accordingly, we hold that the mediation process privilege applies in this case and renders confidential all materials created, acts occurring, and communications made as a part of the mediation process, in accordance with A.R.S. § 12-2238(B).

¶17 In her reply, Grubaugh identifies several classifications of the communications at issue, asserting that some are covered by the mediation process privilege while others are not. **[Reply at 2]** Rather than this court undertaking to identify precisely the application of the mediation process privilege to specific communications, it is more appropriate to allow the superior court to determine, in the first instance, which of the communications, materials, or acts are privileged under A.R.S. § 12-2238(B) as part of the mediation process and which are not confidential under the statute.

### DISPOSITION OF MEDIATION-PRIVILEGED CLAIMS

¶18 In light of our determination that the mediation process privilege has not been waived, it is necessary to address Lawrence's alternative argument. Lawrence cites *Cassel v. Superior Court*, 244 P.3d 1080 (Cal. 2011), for the proposition that claims involving confidential mediation-related communications should be stricken from the complaint. In *Cassel*, a client brought a malpractice action against his former attorneys, claiming they coerced him into accepting an improvident settlement agreement during the course of a pretrial mediation. 244 P.3d at 1085. The client alleged the attorneys misrepresented pertinent facts about the terms of the settlement, harassed him during the mediation, and made false claims that they would negotiate an additional "side deal" to compensate for deficits in the mediated settlement. *Id.* The court explained that absent an absurd result or implication of due process rights, California's mediation privilege statute "preclud[ed] judicially crafted exceptions" to allow an implied waiver of their express technical requirements.[2] *Id.* at 1088. It held

---

[2] In pertinent part, the California statute provides:

that all communications, including attorney-client communications, were confidential and undiscoverable if made "for the purpose of, in the course of, or pursuant to, [the] mediation." *Id.* at 1097. Accordingly, it granted the attorneys' motion in limine to exclude all evidence related to these communications, *id.*, even if that meant the former client would be unable to prevail in his malpractice action, *id.* at 1094 (refusing to create an exception to statute even when the "equities appeared to favor" it); *see also Alfieri v. Solomon*, 329 P.3d 26, 31 (Or. Ct. App. 2014), *review granted*, 356 Or. 516 (explaining that a trial court "did not err in striking the allegations that disclosed the terms of [a mediated] settlement agreement" because there was no "valid exception to the confidentiality rules" governing the agreement).

**¶19**　　　　We agree with the reasoning of the California Supreme Court. Application of the mediation process privilege in this case requires that Grubaugh's allegations dependent upon privileged information be stricken from the complaint. To hold otherwise would allow a plaintiff to proceed

---

(a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.

(b) No writing . . . prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.

(c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential.

Cal. Evid. Code § 1119 (West 1997).

with a claim, largely upon the strength of confidential communications, while denying the defendant the ability to fully discover and present evidence crucial to the defense of that claim. *Cassel*, 244 P.3d at 1096. A privilege should not be invoked in a way that unfairly prevents one party from defending against a claim of another. *See Elia v. Pifer*, 194 Ariz. 74, 82, ¶ 40, 977 P.2d 796, 804 (App. 1998). As already noted, the legislature could have, but did not, create an exception to this privilege for attorney-client communications and legal malpractice claims. Striking from the complaint any claim founded upon confidential communications during the mediation process is the logical and necessary consequence of applying the plain language of this statutory privilege.

## CONCLUSION

¶**20** Arizona's mediation process privilege promotes a strong policy of confidentiality for the mediation process. The Arizona Legislature specified the exceptions to the application of the privilege and left no room for implied common-law waiver. The privilege applies under the facts of this dispute. We therefore vacate the order of the superior court that declared the privilege inapplicable. We also direct the superior court to determine which communications are privileged and confidential under A.R.S. § 12-2238 and to strike from the complaint and ensuing litigation any allegation or evidence dependent upon such privileged communications.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama